IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN MICHAEL WATERMAN,

     Plaintiff,

     v.                           CASE NO. 24-3239-JWL

JEFF ZMUDA, et al.,

     Defendants.

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff Brian Michael Waterman is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein. Plaintiff is also given the opportunity to file a second amended complaint to cure the deficiencies.

**I. Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). The Court granted Plaintiff leave to proceed in forma pauperis. On March 7, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 8) ("MOSC") ordering Plaintiff to show good cause shy his Complaint should not be dismissed for the reasons set forth in the MOSC, or to file an amended complaint to cure the deficiencies. This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 9). The Court's screening standards are set forth in the MOSC.

Plaintiff alleges in his Amended Complaint that in November 2024 he was placed in a cell that was not adequate for his torn right shoulder because he was forced to raise his shoulders up to get handcuffed. (Doc. 9, at 2.) Plaintiff alleges that this reinjured his shoulder. *Id.*

Plaintiff alleges that RN Faye Vargas refused Plaintiff aid, and Warden Schnurr and SOC Zmuda have not had an acting doctor at HCF for nine months. *Id.* Plaintiff alleges that he is in severe pain, he is not allowed to see a doctor or orthopedist, physical therapy is being delayed, and surgery is not being allowed. *Id.* Plaintiff alleges he is being denied "minimum" in retaliation for filing suits. *Id.*

As Count I, Plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 4. Plaintiff alleges that on November 4, 2024, he was taken to A3 where the chuck holes are at least five feet high, forcing Plaintiff to raise his shoulders and hands up "squeezed together" to be handcuffed. *Id.* He claims that he "went to sick [and] seen [sic] Faye Vargas over it" and "she said [Plaintiff] would have to deal with it." *Id.* Plaintiff reinjured his right torn shoulder "that has been left unattended for almost (3) years now."[1] *Id.* at 4, 7. Plaintiff alleges that all pain medication stopped and he had to place numerous sick calls in November of 2024. *Id.* at 7. Plaintiff alleges that APRN Carmen will only allow Plaintiff to have Meloxicam 15 mg, which he claims does not help his shoulder pain. *Id.* He claims he was taking the Meloxicam and Tylenol, but APRN Carmen refuses to allow Plaintiff to consult with

---

[1] The Court's MOSC provides that:

> Plaintiff has acknowledged that he filed a prior case in this Court based on the alleged inadequate medical care he received after injuring his right shoulder. *See* Doc. 6, Doc. 6–1; *see also Waterman v. Harred*, Case No. 23-3182-DDC-RES. The allegations in Case No. 23-3182 regarding inadequate care and treatment for his shoulder injury are based on his care while housed at EDCF. *See Waterman*, Case No. 23-3182, Doc. 101, at 3. Case No. 23-3182 remains pending.
>
> In a response Plaintiff filed in his current case, he alleged that he has a new shoulder injury that is separate from the injury involved in Case No. 23-3182. (Doc. 6, at 1.) He also alleges that he was denied medical care at the Lansing Correctional Facility, which has left him with an unhealed shoulder for over a year. *Id.* Plaintiff claims that defendants at HCF reinjured his shoulder and denied him medical care. *Id.*
>
> Although Plaintiff states that his claims in this case are based on a new injury, he continues to argue in this case that he has been denied medical care since December 2023. (Doc. 1, at 6.) Plaintiff alleges that Dr. Wilson or John Doe denied him physical therapy after it was ordered by an "orthopedic" [sic]. *Id.* Plaintiff alleges that Dr. Wade has now informed Plaintiff that he needs surgery. *Id.* Although Plaintiff claims that he now needs surgery due to this past conduct, he does not claim that he is being denied surgery. In filing an amended complaint, Plaintiff should not include claims that are covered in Case No. 23-3182 or rely on his past injury or medical care that is the subject of that case.

(Doc. 8, at 10.)

an orthopedist.  *Id*.  Plaintiff alleges that HSA Carey Walker is also blocking all access to a doctor or orthopedist, which he requested in January, February, and March of 2025.  *Id*.  Plaintiff alleges that although he has submitted at least 20 sick calls, he is not allowed to see a doctor.  *Id*.

Plaintiff alleges that Casey Walker scheduled one visit with a physical therapist, and he ordered rubber band treatment for six weeks plus once-a-week visits.  *Id*. at 8.  Plaintiff alleges that he was provided with a rubber band in his cell, but Walker and Carmen stated that Plaintiff had to complete the once-a-week visits for six weeks before he could see an orthopedist.  *Id*. Plaintiff alleges that they are deliberately causing this delay to cause Plaintiff pain.  *Id*.  Plaintiff alleges that he cannot get adequate medication, physical therapy, or doctor visits.  *Id*.  Plaintiff alleges that everything is being delayed, and he has not had an x-ray or a further MRI.  *Id*.

As Count II, Plaintiff alleges retaliation in violation of the First Amendment.  *Id*. at 4. Plaintiff alleges that he has been retaliated against for using the grievance system and access to the courts.  *Id*.  He alleges that he has spent six months waiting for another review for minimum custody.  *Id*.  Plaintiff claims that Unit Manager Matthew Moore has "hinted at [Plaintiff's] minimum being denied over civil suits."  *Id*.  Plaintiff alleges that on March 19, 2025, he was discussing a transfer due to medical needs and his shoulder.  *Id*. at 9.  Plaintiff stated that his review for minimum custody was scheduled for April 2025, and Moore stated "you really thinking Topeka is going to grant your minimum or HCF after filing on Zmuda in the courts." *Id*.

Plaintiff names as defendants:  Jeff Zmuda, Secretary of Corrections; Casey Walker, HSA at HCF; Faye Vargas, RN at HCF; Carmen Baynham, APRN at HCF; Daniel Schnurr, HCF Warden; and Matthew Moore, Unit Manager at HCF.  Plaintiff states that he is suing all defendants in both their individual and official capacities.  Plaintiff seeks compensatory and

punitive damages. *Id*. at 6. Plaintiff also seeks injunctive relief, ordering SOC Zmuda to "follow state and federal regulations for operating medical, having doctors in every prison or available, surgery for [Plaintiff's] shoulder, minimum custody as required by custody manual, [and to have an] MRI done." *Id*.

## II. DISCUSSION

### 1. Official Capacity Claims

Plaintiff sues all the defendants in both their individual and official capacities. The Court noted in the MOSC that an official-capacity suit is another way of pleading an action against the governmental entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "The Tenth Circuit has made it clear that where a claimant seeks relief against a KDOC official in his or her official capacity, the party seeks judgment against the KDOC itself, rendering the claim as one against the sovereign." *Jamerson v. Heimgartner*, No. 5:17-3205-JAR-KGG, 2020 WL 1923074, at *10 (D. Kan. April 21, 2020) (citing *Jones v. Courtney*, 466 F. App'x 696, 699–700 (10th Cir. 2012) (collecting cases)).

The Eleventh Amendment therefore applies to any official capacity claims against a KDOC defendant. *Id*. The Eleventh Amendment generally "bars federal suits against state officers in their official capacities for money damages." *Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) (unpublished) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)); *see also Staples v. United States*, 762 F. App'x 525, 529 (10th Cir. 2019) (unpublished) (stating that "§ 1983 authorizes official-capacity claims only for injunctive relief and not for damages") (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)). Kansas has not waived the defense of sovereign immunity with regard to § 1983 prisoner claims in federal courts. *Nunez v. Heimgartner*, Case No. 15-3259-EFM-DJW, 2017 WL 2264466, at *5 (D. Kan. May 24, 2017)

(citing *Hunter v. Young*, 238 F. App'x 336, 338 (10th Cir. 2007)).  "Moreover, the Supreme Court has held that neither states nor state officers sued in their official capacities are 'persons' within the meaning of 42 U.S.C. § 1983." *Franklin*, 160 F. App'x at 734 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  Therefore, Plaintiff's claim for money damages against defendants in their official capacity is subject to dismissal.

### 2. Personal Participation

Plaintiff alleges that Secretary of Corrections Jeff Zmuda and Warden Schnurr have not had a doctor at HCF for nine months.  An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)).  Conclusory allegations of involvement are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability).    An official's liability may not be predicated solely upon a theory of respondeat superior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).  A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011).  "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

Plaintiff has not alleged that there is a policy that is responsible for the lack of a doctor at HCF.  Nothing suggests that a doctor is unavailable, even if one is not specifically assigned to HCF.  He has not alleged that no prisoner at HCF has been allowed to see a doctor.  Rather, he is being denied a doctor or orthopedist visit until he has completed his physical therapy sessions. Plaintiff has not shown the requisite custom or policy, or that these defendants caused the complained of harm, or that they acted with deliberate indifference.  Plaintiff's claims against SOC Zmuda and Warden Schnurr are subject to dismissal.

### 3.  Eighth Amendment

Plaintiff claims cruel and unusual punishment based on his medical care for his shoulder. Plaintiff alleges that he has reinjured his shoulder at HCF, and has not been allowed to see a doctor or orthopedist, or to have surgery.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

 "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and

difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Plaintiff's allegations do not show a complete lack of medical care, but rather show Plaintiff's disagreement regarding the proper course of treatment or medication. He prefers to see an orthopedist now, as opposed to after completion of his physical therapy sessions. He is receiving medication, but prefers different medication. A complaint alleging that plaintiff was not given plaintiff's desired medication, but was instead given other medications, "amounts to merely a disagreement with [the doctor's] medical judgment concerning the most appropriate treatment." *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (noting that plaintiff's allegations indicate not a lack of medical treatment, but a disagreement with the doctor's medical judgment in treating a condition with a certain medication rather than others); *Hood v. Prisoner Health Servs., Inc.*, 180 F. App'x 21, 25 (10th Cir. 2006) (unpublished) (where appropriate non-narcotic medication was offered as an alternative to the narcotic medication prescribed prior to plaintiff's incarceration, a constitutional violation was not established even though plaintiff disagreed with the treatment decisions made by prison staff); *Carter v. Troutt*, 175 F. App'x 950 (10th Cir. 2006) (unpublished) (finding no Eighth Amendment violation by prison doctor who refused to prescribe a certain pain medication where he prescribed other medications for the inmate who missed follow-up appointment for treatment and refused to be examined unless he was prescribed the pain medication he wanted); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation.").

Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir.

1993).  In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted).  "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).  Plaintiff takes issue with being required to complete his physical therapy sessions prior to seeing an orthopedist.  Plaintiff has not shown that this course of treatment is the result of deliberate indifference.

The Tenth Circuit has found that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1139 (10th Cir. 2023).  "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted).  Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id*.  "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*. (citations omitted).

Plaintiff has not been denied all access to a doctor, orthopedist, or surgery.  He is merely required to complete his physical therapy sessions first.  Plaintiff acknowledges that he has seen the APRN and a physical therapist, and was ordered to conduct rubber band exercises and weekly physical therapy sessions for six weeks before seeing an orthopedist.  Plaintiff does not indicate that a medical provider has informed him that he will not be able to see a doctor or orthopedist after he finishes his physical therapy, or that he will not be allowed to have surgery.

9

Plaintiff has failed to show that any defendant disregarded an excessive risk to his health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference. Plaintiff's claims suggest, at most, negligence, and are subject to dismissal.

### 4. Retaliation

Plaintiff alleges retaliation based on UT Moore's "hint" that he may not get minimum custody based on his civil actions. Plaintiff does not suggest that Moore is making the custody decision or that he possesses inside knowledge regarding Plaintiff's future classification determinations. Plaintiff's allegations suggest that Moore was just making a comment.

Plaintiff fails to state a claim of retaliation. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). Plaintiff has not alleged that an adverse action has already been taken against him. He merely fears that he may not receive the security classification he wants.

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252,

1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims.  Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any adverse action or improper retaliatory motive.

## IV. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper second amended complaint upon court-approved forms that cures all the deficiencies discussed herein.  To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (24-3239-JWL) at the top of the first page of the amended complaint and must name every defendant in the caption of the amended complaint.

*See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.  If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter may be dismissed without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **June 2, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **June 2, 2025**, in which to file a complete and proper second amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated May 2, 2025, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**